AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| United States of America | |
| v. | |
| Andre Vito ORBECK, | Case No.   2:25-mj-04918-DUTY |
| Defendant | |

**FILED**
CLERK, U.S. DISTRICT COURT

August 10, 2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____CLD_____ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of August 9, 2025 in the county of Los Angeles in the Central District of California, the

defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Methamphetamine |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

*/s/ Eric Diaz*
———————————————————
*Complainant's signature*

Eric Diaz, Special Agent
———————————————————
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   August 10, 2025

*Judge's signature*

City and state:   Los Angeles, California

Hon. Alka Sagar, U.S. Magistrate Judge
———————————————————
*Printed name and title*

AUSA: Thi Hoang Ho (x0596)

**AFFIDAVIT**

I, Eric Diaz, being duly sworn, declare and state as follows:

## I.  PURPOSE OF AFFIDAVIT

1.   This affidavit is made in support of a criminal complaint against Andre Vito ORBECK ("ORBECK"), for violating 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute Methamphetamine on August 9, 2025.

2.   This affidavit is also made in support of an application for a warrant to search the following digital device seized from ORBECK and currently in the custody of Homeland Security Investigations ("HSI") in El Segundo, California, as described more fully in attachment A:

3.   A white-colored Samsung cellphone with black case ("SUBJECT DEVICE").

4.   The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute controlled substances), 21 U.S.C. § 846 (conspiracy to possess with the intent to distribute controlled substances), 21 U.S.C. § 953(a) (unlawful exportation of controlled substances), 21 U.S.C. § 960 (knowing exportation of a controlled substance), and 18 U.S.C. § 554 (knowing exportation of any merchandise contrary to any law) (the "Subject Offenses"), as described more fully in Attachment B.  Attachments A and B are incorporated herein by reference.

5.    The facts set forth in this affidavit are based upon
my personal observations, my training and experience, and
information obtained from various law enforcement personnel and
databases.  This affidavit is intended to show that there is
sufficient probable cause for the requested complaint and
warrants and does not purport to set forth all my knowledge of
or investigation into this matter.  Unless specifically
indicated otherwise, all conversations and statements described
in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

6.    I am a Special Agent with HSI, where I have worked
since November of 2024.  I am a "federal law enforcement
officer" within the meaning of Federal Rule of Criminal
Procedure 41(a)(2)(c), that is, a government agent engaged in
enforcing the criminal laws and duly authorized by the Attorney
General to request a search warrant.  In the course of my work,
I conducted physical surveillance and reviewed electronic
records.

7.    During my tenure as a Special Agent, I have completed
approximately six months of instruction at the Federal Law
Enforcement Training Center (FLETC), in Glynco, Georgia,
completing the Criminal Investigator Training Program (CITP) and
HSI's add on training, Homeland Security Investigations Special
Agent Training (HSISAT). Prior to my employment with HSI, I was
employed by the Lee County Sheriff's Office (LCSO) for
approximately (8) years. During my tenure with LCSO, I
investigated and assisted in numerous investigations involving

2

the distribution and possession of narcotics.  Additionally, I currently hold a master's degree in criminal justice, earned in December of 2021.

### III. <u>STATEMENT OF PROBABLE CAUSE</u>

8.　Based on my involvement in this investigation, my conversations with other law enforcement officials involved in this investigation, and my review of reports and records connected to this investigation, I am aware of the following.

**A.　ORBECK Checks a Suitcase Filled with Suspected Narcotics for His Outbound Flight to Papeete, Tahiti.**

9.　On August 8, 2025, ORBECK was scheduled to fly from Los Angeles International Airport ("LAX") to Papeete, Tahiti on Air Tahiti Nui Flight TN 101, at approximately 11:10 p.m.

10.　U.S. Customs and Border Protection ("CBP") flagged ORBECK for additional screening based on recent narcotic trends of narcotics being trafficking from Los Angeles, California to Papeete, Tahiti. The trafficked narcotics are generally concealed in everyday items and placed into luggage.

11.　CBP officers requested ORBECK's suitcase from Air Tahiti Nui for further inspection. CBP officers located, inside the suitcase, a blue and yellow Coleman cooler which contained a RYOBI power drill, drill bits, and battery pack. Upon removing the items, an anomaly at the bottom of the cooler was discovered. Specifically, the lining of the cooler appeared to have been tampered with and had a visible white substance stained near a corner seam. The anomaly felt like an uneven crystalline-type substance.

 

12.   CBP officers located ORBECK at Gate 225 while he was
attempting to board his flight. At the time he was detained,
ORBECK had his French Passport, checked bag tag #267223, and the
SUBJECT DEVICE.

**B.   ORBECK's Suitcase Contained Approximately 500 Grams of Methamphetamine**

13. At approximately 12:20 p.m., CBP Officers cut open the
soft cooler bag and extracted a vacuum sealed bag within the
lining of the cooler bag. Inside the vacuum sealed bag was a
white crystalline substance. CBP tested the substance utilizing
the Gemini Thermo Analyzer, which yielded positive results for
methamphetamine. HSI was notified and later arrived on scene
for further investigation.

4

 

## IV.  TRAINING AND EXPERIENCE ON DRUG OFFENSES

14.   Based on my training and experience and familiarity with investigations into drug trafficking conducted by other law enforcement agents, I know the following:

a.    Drug trafficking is a business that involves numerous co-conspirators, from lower-level dealers to higher-level suppliers, as well as associates to process, package, and deliver the drugs and launder the drug proceeds. Drug traffickers often travel by car, bus, train, or airplane, both domestically and to foreign countries, in connection with their illegal activities in order to meet with co-conspirators, conduct drug transactions, and transport drugs or drug proceeds.

b.    Drug traffickers often maintain books, receipts, notes, ledgers, bank records, and other records relating to the manufacture, transportation, ordering, sale and distribution of illegal drugs. The aforementioned records are often maintained where the drug trafficker has ready access to them, such as on their cell phones and other digital devices.

5

c.    Communications between people buying and selling drugs take place by telephone calls and messages, such as e-mail, text messages, and social media messaging applications, sent to and from cell phones and other digital devices. This includes sending photos or videos of the drugs between the seller and the buyer, the negotiation of price, and discussion of whether or not participants will bring weapons to a deal. In addition, it is common for people engaged in drug trafficking to have photos and videos on their cell phones of drugs they or others working with them possess, as they frequently send these photos to each other and others to boast about the drugs or facilitate drug sales.

d.    Drug traffickers often keep the names, addresses, and telephone numbers of their drug trafficking associates on their digital devices. Drug traffickers often keep records of meetings with associates, customers, and suppliers on their digital devices, including in the form of calendar entries and location data.

## V. TRAINING AND EXPERIENCE ON DIGITAL DEVICES[1]

15.    Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.    Forensic methods may uncover electronic files or been downloaded, deleted, or viewed via the Internet. Normally,

---

[1] As used herein, the term "digital device" includes the SUBJECT DEVICE.

when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the Hard drive after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

   b.    Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device. That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them. For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

   c.    The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it. For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d.    Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions. Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

e.    Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it can take a substantial period of time to search a digital device for many reasons, including the following:

i.    Digital data are particularly vulnerable to inadvertent or intentional modification or destruction. Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

ii.    Digital devices capable of storing multiple gigabytes are now commonplace. As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

16.    Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## VI. CONCLUSION

17.  For all the reasons described above, I submit that there is probable cause to believe that ORBECK has committed a violation of 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute Methamphetamine. I further submit that there is probable cause to believe that the items to be seized described in Attachment B will be found in a search of the SUBJECT DEVICE described in Attachment A.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this _10th_ day of
August 2025.


_____
HONORABLE ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE